Michael Lee **CLARK**, Appellant,

v.

**STATE of Indiana, Appellee.**

No. 29S00–8810–CR–861.

Supreme Court of Indiana.

Nov. 1, 1990.

David F. Tudor, F. Keith Leach, Noblesville, for appellant.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

Following a jury trial, appellant Michael Lee Clark was convicted of driving while suspended, I.C. 9-1-4-52, a Class A misdemeanor; operating while intoxicated, I.C. 9-11-2-2, a Class A misdemeanor; and operating with a .10% blood alcohol level, I.C. 9-11-2-1, a Class C misdemeanor. After the jury had returned these verdicts on the misdemeanor counts, a second phase of this trial ensued and culminated in the elevation of appellant's conviction to a Class D felony, I.C. 9-11-2-3, which provides that a person who violates section one or two of this chapter commits a Class D felony if he has a previous conviction of operating while intoxicated and that previous conviction occurred within the last five years. Appellant had been convicted for operating while intoxicated on May 19, 1983, and December 17, 1985. Appellant received a one-year sentence for driving while suspended and a two-year sentence for operating while intoxicated, which was enhanced an additional two years for aggravating circumstances. The trial court ordered these sentences to run consecutively. At a third phase of this trial, Clark's sentence then was enhanced an additional thirty years as appellant was found to be a habitual felony offender pursuant to I.C. 35-50-2-8.

Appellant now brings this direct appeal, asserting that his convictions must be reversed because he was denied effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution. Appellant also contends that his Class D felony conviction and habitual offender sentence were constitutionally infirm because the jury instructions at those phases of the proceedings were incomplete. Appellant further maintains that his habitual offender sentence should be vacated because the information upon which the State proceeded was defective. In addition, appellant contends that his sentence of thirty-five years for operating while intoxicated and driving while suspended is excessive and disproportionate under the Eighth Amendment to the United States Constitution and Article I, § 16 of the Indiana Constitution and thus his sentence must be revised.

The facts adduced at trial were as follows: On November 9, 1986, Officer John R. Towle, who at that time was with the Noblesville Police Department, observed a vehicle moving slowly in an eastward direction. Officer Towle stated that as the car passed him he was able to identify the driver of the vehicle as a white male with dark hair and a moustache. Officer Towle then entered the intersection and followed the vehicle as it continued in an eastward direction on Hannibal Street. The vehicle veered to the right, running into a large pile of leaves, and then swerved back to the left to avoid a parked car. The vehicle then proceeded slowly through a four-way stop without coming to a complete stop.

Officer Towle continued to follow the vehicle as it entered the well lighted Village Pantry parking lot. At this time, Officer Towle noticed there were several other people in the vehicle. He stated that there was a male and a female in the back seat and that the driver of the vehicle looked outside the window back at his vehicle. Officer Towle identified appellant as the driver of the vehicle. Officer Towle then made a U-turn and called for back-up assistance and proceeded into the Village Pantry parking lot. Officer Towle testified that, other than for a few seconds when he was making his U-turn, he kept his eyes on

the vehicle the entire time and he saw no one exit the car.

Officer Towle approached the vehicle and asked appellant, who was seated behind the wheel of the vehicle, for his driver's license and vehicle registration. A female in the passenger's seat of the vehicle produced the registration. Officer Towle, having noticed an odor of alcohol emanating from inside the vehicle, asked appellant to step outside of the car. Officer Towle stated that he noticed that appellant's eyes were bloodshot, red and watery and that his face was flushed. Appellant also appeared to be having trouble keeping his balance when he walked. Officer Towle then asked appellant to perform a field sobriety test. Appellant failed to touch his nose in the finger-to-nose test and his balance was off in the heel-to-toe test.

Officer Towle, reading from an implied consent card, then informed appellant he had probable cause to believe appellant had operated a vehicle while intoxicated, and he asked appellant if he was willing to submit to a chemical test. Appellant stated that he would. The results of the Intoxilyzer test showed appellant's blood alcohol content to be .13%. Officer Towle stated that it was his opinion that appellant was intoxicated and not fit to operate a vehicle at that time.

Appellant, however, testified at trial that Julie Hart was driving the vehicle when it pulled into the Village Pantry. Appellant maintained that both he and Julie got out of the vehicle at the Village Pantry. Julie went inside the store to have the gas pumps turned on, at which time appellant noticed that Officer Towle was approaching and he thus leaned inside the car to tell Greg and Sandy Newby to straighten up. Appellant stated that Officer Towle asked to see his driver's license, and he replied that he did not have one. According to appellant, Officer Towle then ordered appellant to get inside the car and he demanded to see a vehicle registration. Holly Perkins, who saw appellant, Julie Hart, and Greg and Sandy Newby at the Club Bar that evening, corroborated certain portions of appellant's testimony. She testified that

when the four left the Club Bar, the vehicle's last stop before the Village Pantry, Julie Hart was driving the car.

■ Appellant asserts that his convictions must be reversed because he was denied effective assistance of counsel in violation of his Sixth and Fourteenth Amendment rights. Appellant provides a lengthy list of alleged errors and omissions that he claims were made by his trial counsel which, according to appellant, had the cumulative effect of denying him effective assistance of counsel. The United States Supreme Court has established a two-part standard by which claims of ineffective assistance of counsel are evaluated. Preliminarily, appellant must make a showing that the performance of his trial counsel was deficient. Appellant then must show that he suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). This Court has stated that judicial scrutiny of counsel's performance is highly deferential and should not be exercised through distortions of hindsight. Counsel is presumed competent, and appellant must present strong and convincing evidence to rebut the presumption. *Duncan v. State* (1987), Ind., 514 N.E.2d 1252. We will address appellant's allegations of alleged incompetence to determine whether they amount, individually or collectively, to ineffective assistance of counsel.

■ Appellant contends that trial counsel erred when he failed to challenge the sufficiency of the probable cause leading to the initial stop. However, Officer Towle's testimony as to the path travelled by the vehicle is uncontroverted. He stated that the vehicle ran over a large pile of leaves, swerved to avoid a parked car, and ran a four-way stop. This uncontroverted evidence constituted probable cause for a stop. Thus, appellant's trial counsel was justified in not objecting to the sufficiency of the probable cause.

Appellant states that trial counsel erred in failing to admit certain medical records pertaining to an eye condition that afflicted Officer Towle. On cross-examination, however, trial counsel did question Officer

Towle with respect to the substance of the medical records. Trial counsel's actions with respect to this issue cannot be said to have fallen below an objective standard of reasonable representation.

■ Appellant asserts that trial counsel erred when he failed to effectively suppress a breathalyzer test or even object to the admission of the test as evidence. A review of the trial record, however, shows that the State established that Officer Towle had successfully completed the forty-hour course instructed by the State Department of Intoxicology allowing one to become a breath test or chemical test operator. Officer Towle also testified that he properly administered the test in this instance. Given this foundation laid by the State, counsel cannot be faulted for failing to supress this breathalyzer test. With respect to appellant's allegation that counsel erred in failing to object to the admission of the breathalyzer test, appellant is required to demonstrate that a proper objection would have been sustained by the trial court. Absent such a showing, appellant cannot prevail on an ineffective assistance of counsel claim. *Grigsby v. State* (1987), Ind., 503 N.E.2d 394. Appellant has made no attempt to establish that such an objection would have been sustained by the trial court.

Appellant next contends that trial counsel erred in failing to object to the admission of certain exhibits because, according to appellant, the exhibits were not properly certified and thus were inadmissible. Specifically, appellant is referring to State's Exhibits Nos. 5, 10, 11, and 16. A review of the record, however, reveals that the State laid a proper foundation for the admission of each of these exhibits and they were properly certified. Exhibit 5, appellant's driving record, was introduced along with a certification letter signed by the Commissioner's duly authorized representative. Exhibit 10, the Officer's Arrest Report, bears an Indianapolis Police Department stamp stating that it is certified to be a true copy. Exhibit 11, a police "mug shot" of appellant, was properly certified in that Michael Piddy, keeper of records for

the Indianapolis Police Department, testified that the picture was a true and accurate copy of the negative in his custody. Exhibit 16, Certification of Records, is signed and certified by Greg Cress who is certified as a keeper of records. Thus, counsel cannot be faulted for failing to object to the admission of these records as they were properly certified.

■ Appellant also claims that he was prejudiced by counsel's ineffective cross-examination of State's witness Gregory Newby. A review of the cross-examination, however, shows that counsel attempted to bring out Newby's use of drugs and alcohol on the evening of Clark's arrest. On cross-examination, Newby admitted to drinking twelve beers that evening. Trial counsel also pursued whether Newby was testifying under any threat or duress from the prosecutor's office. Thus, counsel's cross-examination of Newby was adequate and did not deprive appellant of reasonably effective assistance of counsel.

■ With respect to counsel's failure to utilize the testimony of eye-witness Julie Hart, however, appellant does present strong and convincing evidence sufficient to overcome the presumption of competent assistance. In appellant's first trial, which resulted in a mistrial, Julie Hart testified that she was driving the vehicle on its route to the Village Pantry. She stated that she was with appellant the entire evening and that he never operated the vehicle. During appellant's second trial, however, Hart was in Florida and did not testify. Trial counsel made no attempt to contact Hart prior to appellant's second trial; appellant did make an unsuccessful attempt to contact her through the mail. In a hearing on appellant's Motion to Correct Errors, trial counsel admitted that he deemed Hart's testimony to be important. On July 20, 1987, three days before appellant's second trial commenced, counsel sought a continuance due to Hart's unavailability, which was denied on July 21. Counsel made no attempt to admit Hart's testimony from appellant's first trial despite the crucial nature of the testimony.

Thus, appellant has made a showing that trial counsel's performance was deficient.

Appellant's ineffective assistance of counsel claim fails, however, because he is unable to show that he was prejudiced by counsel's failure to admit Hart's eyewitness testimony. In appellant's first trial, Hart did testify as to her eye-witness account of the events. Despite this testimony, the jury still found appellant guilty of driving while suspended, operating while intoxicated, and operating while intoxicated per se. In addition, Hart's testimony from the first trial was cumulative to some extent. Holly Perkins also provided testimony stating that Hart, and not appellant, was driving the vehicle. Thus, while trial counsel's failure to include Hart's prior testimony in appellant's second trial constituted deficient representation, appellant has not shown he was prejudiced by the deficiency.

Appellant makes numerous other allegations of ineffective assistance of counsel, but these allegations are not strongly supported by facts in the record and do not assert how trial counsel could have better addressed the situations. In general, where allegations of ineffective assistance of counsel are entirely conclusory and are wholly unsupported by argument, reversal is inappropriate. *Hoffman v. State* (1988), Ind., 520 N.E.2d 436.

■ Appellant also contends that the jury instructions were incomplete and that the verdicts were therefore constitutionally infirm and should be vacated. Specifically, appellant argues that the trial court erred when, at the habitual offender phase of the trial, it failed to instruct the jury that they were to determine the facts and the law as required by Article I, § 19 of the Indiana Constitution and I.C. 35–37–2–2(5). Appellant also asserts that the record is silent as to the giving of final instructions in the second phase of the trial. At trial, appellant did not object to the instructions, and he did not attempt to tender a more complete instruction on this issue. This Court has held that a party cannot complain of incomplete or omitted instructions when he has failed to tender any instructions on

that issue. *Law v. State* (1980), 273 Ind. 624, 406 N.E.2d 1185. In the present case, however, appellant asserts that the deficient instructions to the jury constituted fundamental error. Fundamental error is error that if not corrected would deny a defendant fundamental due process. *Burkes v. State* (1983), Ind., 445 N.E.2d 983.

■ The facts surrounding the issuance of the jury instructions in this case do not amount to fundamental error. Appellant is incorrect when he asserts that the record is silent with respect to the giving of final instructions at the second phase of the trial. The record shows that final instructions as to phase two of the trial were read to the jury. Further, the trial court's failure, at the habitual offender phase, to explicitly inform the jury that they were the exclusive judges of all questions of fact and that they were to determine the law does not rise to the level of fundamental error. This Court has held that instructions are to be read as a whole and the impact of the entire charge should be considered in determining reversible error. *Carter v. State* (1977), 266 Ind. 196, 361 N.E.2d 1208. In this instance, the jury was instructed on more than one occasion that they were the exclusive arbiter of the facts and that they were to determine the law. It cannot be said that on this issue appellant was denied fundamental due process and thus there was no fundamental error.

Appellant next contends that Count VI of the information, the habitual offender charge, was defective in that it was not signed and therefore the trial court's habitual offender finding and corresponding thirty-year sentence enhancement cannot stand. Count VI originally was filed on January 8, 1987, and charged appellant as an habitual Class D felony offender and, pursuant to I.C. 35–50–2–7.1, sought an eight-year sentence enhancement. On February 23, 1987, the State amended Count VI and sought a thirty-year sentence enhancement based on appellant's prior convictions for second degree burglary, the equivalent of a Class C felony conviction, and theft, a Class D felony. As originally

filed, Count VI was signed and sworn to by the prosecuting attorney. The amended version of Count VI, however, was not signed by the prosecuting attorney.

I.C. 35–34–1–2(b) provides that an information shall be signed by the prosecuting attorney or his deputy and sworn to or affirmed by him or any other person. Further, I.C. 35–34–1–5(b)(2) provides that when the information or indictment is amended, it shall be signed by the prosecuting attorney or his deputy. Appellant did not object to this amended information at trial or in his Motion to Correct Errors. The purpose of such a signature is to insure that prosecutions have been investigated and approved by the prosecutor's office, the only officer authorized to initiate criminal prosecutions. *Brown v. State* (1980), Ind., 403 N.E.2d 901. In the present case, this purpose was served. J. Richard Cambell, a deputy prosecuting attorney in Hamilton County, filed the State's Motion For Leave To Amend Count VI with an attached copy of the amended Count VI. This motion, filed in open court on February 23, was signed by Cambell. The amended information therefore was investigated by and had the approval of the prosecutor's office. While the amended information in this case was defective in that it lacked the signature of the prosecuting attorney, this Court will not reverse where the purpose of requiring such a signature is so clearly satisfied.

Appellant also asserts that his sentence should be revised as he maintains that a sentence of thirty-five years for operating while intoxicated and driving while suspended is excessive and disproportionate under the Eighth Amendment to the United States Constitution and Article I, § 16 of the Indiana Constitution. The Eighth Amendment provides that "excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." In *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), the United States Supreme Court held that a life sentence without the possibility of parole for a seventh nonviolent felony amounted to cruel and unusual punishment, stating:

> In sum, we hold as a matter of principle that a criminal sentence must be proportionate to the crime for which the defendant was convicted.

*Id.* at 290, 103 S.Ct. at 3009, 77 L.Ed.2d at 649. *Solem*, however, requires an extensive proportionality analysis only in those cases involving life sentences without parole. *Taylor v. State* (1987), Ind., 511 N.E.2d 1036 (citing *United States v. Rhodes*, 779 F.2d 1019, 1028 (4th Cir.1985), *cert. denied*, 476 U.S. 1182, 106 S.Ct. 2916, 91 L.Ed.2d 545). Appellant's sentence, therefore, does not violate the Eighth Amendment of the United States Constitution.

The Indiana Constitution does, however, require that "all penalties shall be proportioned to the nature of the offense." Article I, § 16. The nature and extent of penal sanctions are primarily legislative considerations and courts are not at liberty to set aside a legislatively sanctioned penalty because it may seem too severe to the Court. *Loza v. State* (1975), 263 Ind. 124, 325 N.E.2d 173. Appellant does nevertheless have a right to have the proportionality of his penalty reviewed under the Indiana Constitution. Here, the fact that appellant's sentence falls within parameters affixed by the legislature does not relieve this Court of the constitutional duty to review the duration of appellant's sentence as it is possible for the statute under which appellant is convicted to be constitutional, and yet be unconstitutional as applied to appellant in this particular instance. In *Cox v. State* (1932), 203 Ind. 544, 559, 181 N.E. 469, 472, this Court stated:

> There are cases to be found, however, of defendants who have been found guilty and imprisoned under valid statutes, where courts of appeal have held such imprisonments to be in violation of the Constitution, by reason of their length, they being so severe and so entirely out of proportion to the gravity of the offenses actually committed as "to shock public sentiment and violate the judgment of a reasonable people."

Appellant does not question the constitutionality of Indiana's habitual offender provisions, but rather he asserts that as applied to him in this instance the habitual offender provisions violate Article I, § 16 of the Indiana Constitution. This Court has held that the proportionality analysis of a habitual offender penalty has two components. First, a reviewing court should make an inquiry into the "nature" and gravity of the present felony. Second, a reviewing court should consider the "nature" of the predicate felonies upon which the habitual offender sentence is based. *Mills v. State* (1987), Ind., 512 N.E.2d 846; *Taylor*, 511 N.E.2d 1036. Our review of the "nature" and gravity of the present felony makes it unnecessary to consider the second component.

Appellant received a total sentence of thirty-five years in the present case, thirty-four of those years stemming from a conviction for operating while intoxicated. Ordinarily, a conviction for operating while intoxicated, which is a Class A misdemeanor, would be punishable by imprisonment of not more than one year and a fine not to exceed five thousand dollars. I.C. 35-50-3-2. Because appellant had a previous conviction for operating while intoxicated within the last five years, however, he was subject to an enhancement of the offense pursuant to I.C. 9-11-2-3, a Class D felony. A person convicted of a Class D felony typically would receive a two-year sentence. I.C. 35-50-2-7 provides that such a sentence could be enhanced up to two years for aggravating circumstances and reduced up to one year for mitigating circumstances. In addition, one who commits a Class D felony may be fined up to ten thousand dollars.

Based on a 1977 conviction for second degree burglary, the equivalent of a Class C felony, and a 1980 conviction for theft, a Class D felony, appellant's sentence then was enhanced thirty years pursuant to Indiana's habitual offender provisions. It was within the trial court's discretion to reduce appellant's sentence as an habitual offender up to twenty years. I.C. 35-50-2-8(e) permits the trial court to subtract up to twenty years from the additional fixed term of thirty years if the underlying felony for which the person is being sentenced is a Class D felony. Further, because one of appellant's predicate felonies was a Class D felony, it was within the trial court's discretion to subtract up to ten years from the additional fixed term of thirty years. I.C. 35-50-2-8(e). The trial court chose not to exercise either of these options and imposed an additional fixed term of thirty years.

The penalty imposed upon appellant in this instance is not proportionate to his offense and therefore violates Article I, § 16 of the Indiana Constitution. An enhancement authorized by this statute that is ultimately based upon a conviction for conduct that the legislature has classified as a misdemeanor, where there is no injury to person or property, is entirely out of proportion to the gravity of the offense.

We therefore affirm appellant's convictions and corresponding sentences for driving while suspended, a one-year sentence, and operating while intoxicated, a two-year sentence plus an additional two years for aggravating circumstances ordered to run consecutive to the driving while suspended sentence. We reverse, however, as to the trial court's decision to further enhance appellant's sentence. Under the particular circumstances in the present case as described above in this opinion, appellant's sentence of two years for operating while intoxicated, plus an additional two years for aggravating circumstances, is the maximum sentence allowed by the Constitution.

This cause is therefore remanded to the trial court with instructions to modify its judgment to reflect sentences of one year and four years for the two convictions, the sentences to run consecutively for a total of five years.

SHEPARD, C.J., and DICKSON, J., concur.

GIVAN, J., dissents with opinion in which PIVARNIK, J., joins.

GIVAN, Justice, dissenting.

I respectfully dissent to the majority opinion in setting aside the thirty (30) year enhancement by reason of appellant's status as a habitual offender.

The majority opinion takes the position that appellant's convictions are "ultimately based upon a conviction for conduct that the legislature has classified as a misdemeanor," thus not justifying an enhancement for his status as a habitual offender. I would point out that appellant's conviction was "ultimately" a Class D felony. This matter was presented fully to the trial court who had the discretion to determine whether a presumptive sentence should be enhanced because of aggravating factors and whether the term of imprisonment should be served concurrently or consecutively. *Parrish v. State* (1987), Ind., 515 N.E.2d 516. As recognized by the majority, this Court will not alter a sentence imposed by a trial judge if it is within statutory bounds unless it appears that the sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender. *Menifee v. State* (1987), Ind., 512 N.E.2d 142.

I cannot agree with the majority opinion that multiple offenses of driving while intoxicated are so minor as to be dealt with as misdemeanors. Drunken drivers in Indiana cause more deaths annually than any other group of criminals, including armed robbers. In rendering sentence in the case at bar, the trial court stated:

> "The Court accepts [the] Probation Department's finding of no mitigating circumstances and the aggravating circumstances of recent violation of probation, history of criminal activity; the deft's need for correction and rehabilitation that can be provided by commitment to penal facility, and that imposition of a reduced sentence would deprecate [the] seriousness of [the] offense. Court further accepts State's aggravating circumstances of lack of remorse and lack of respect for [the] criminal justice system."

In the case at bar, we have a defendant who showed a lack of remorse and a lack of respect for the criminal justice system. It is obvious that removing his license did not deter him from jeopardizing the lives and property of citizens using our public roads. I cannot consider this conduct so lightly as does the majority.

I would affirm the trial court's imposition of a thirty (30) year enhancement by reason of appellant's habitual offender status.

PIVARNIK, J., concurs.