**Corinthian MANLEY, Appellant–
Defendant Below,**

v.

**STATE of Indiana, Appellee–
Plaintiff Below.**

No. 45A03–9502–PC–39.

Court of Appeals of Indiana.

Oct. 3, 1995.

Transfer Denied Dec. 7, 1995.

Susan K. Carpenter, Public Defender, Linda G. Nicholson, Deputy Public Defender, Indianapolis, for appellant.

Pamela Carter, Attorney General, Mary Dreyer, Deputy Attorney General, Indianapolis, for appellee.

## OPINION

ROBERTSON, Judge.

Corinthian Manley appeals the denial of his petition for post-conviction relief and presents the following issues:

I. Whether the State must prove that a handgun is operable in order to sufficiently prove that a defendant is guilty of carrying a handgun without a license.

II. Whether the failure to instruct Manley's jury on the statutory definition of firearm is reversible error.

III. Whether the Court erred in instructing the jury on the sentencing consequences of the habitual offender enhancement.

IV. Whether the sentence imposed was disproportionate to the offense and the offender.

V. Whether Manley received ineffective assistance of trial and appellate counsel.

We affirm.

Manley received a conviction of carrying a handgun without a license, for which the trial court sentenced him to a four-year term, enhanced by thirty years due to his status as

an habitual offender. Our supreme court affirmed the conviction on direct appeal. *See Manley v. State* (1989), Ind., 535 N.E.2d 553. Manley eventually filed a petition for post-conviction relief and now appeals the denial of that petition.

 The post-conviction petitioner bears the burden to establish grounds for relief by a preponderance of the evidence. *Schiro v. State* (1989), Ind., 533 N.E.2d 1201, 1204, *cert. denied,* 493 U.S. 910, 110 S.Ct. 268, 107 L.Ed.2d 218. A petitioner who has been denied relief is in the position of one who has received a negative judgment and will not obtain a reversal unless the evidence is undisputed and leads inevitably to a conclusion opposite that of the post-conviction court. *Id.*

## I

██ Manley claims the post-conviction court erroneously denied his petition because the evidence did not show the handgun he had possessed had been operable at the time. The claim is an indirect attack on the sufficiency of the evidence.

██ A handgun is, by definition, a firearm with certain characteristics. Ind.Code 35–47–2–1. A firearm includes within its definition any weapon that is designed to expel a projectile by means of an explosion. I.C. 35–47–1–5. According to the plain terms of the statutes, Indiana law does not require that the State prove a handgun is operable to obtain a conviction of carrying a handgun without a license. That the handgun was designed to expel a projectile my means of an explosion is sufficient.

In the present case, the evidence is sufficient to support the determination that the handgun Manley possessed had been designed to expel a projectile by means of an explosion. The evidence therefore is not undisputed and does not lead inevitably to the conclusion that the evidence is insufficient to support Manley's conviction. Manley has not established that he is entitled to reversal.

## II

██ Manley claims the post-conviction court erroneously denied his petition because

the trial court had not instructed the jury on the legal definition of "firearm" according to I.C. 35–47–1–5. Where terms are in common use, however, and are such as can be understood by a person of ordinary intelligence, they need not be defined or explained in the absence of anything in the charges to obscure their meaning. *See McNary v. State* (1981), Ind.App., 428 N.E.2d 1248, 1252. In the present case, the jury appropriately could have concluded that the handgun in question was a firearm within the common use of that term. Manley has identified nothing in the charges as a whole which would have obscured the meaning of that term. Thus, Manley has not shown the evidence is undisputed and leads inevitably to a conclusion that the trial court erred when it instructed the jury. He is not entitled to a reversal on this issue.

## III

██ Manley claims the post-conviction court erroneously denied his petition because the trial court instructed the jury inappropriately on the consequences of the sentence enhancement for an habitual offender determination. The trial court had informed the jury that an habitual offender enhancement amounted to thirty years but that credit for good behavior could reduce any sentence imposed by half. This issue could have been raised in Manley's direct appeal but he did not pursue it at that time. Therefore, the it is waived for purposes of post-conviction review. *See McFarland v. State* (1991), Ind., 579 N.E.2d 610, 611. We will revisit the issue below as it relates to the alleged ineffective assistance of trial and appellate counsel.

## IV

██ Manley claims the post-conviction court erroneously denied his petition because the trial court had imposed a disproportionate sentence for his offense. The State had charged Manley with carrying a handgun without a license, a class A misdemeanor. A previous conviction had elevated the offense to a class D felony, for which the trial court had imposed a four-year sentence. The jury also had determined Manley to be an habitu-

al offender, and the trial court had enhanced the four-year sentence by an additional thirty years. Manley claims his thirty-four year sentence is disproportionate to his offense, which was originally a misdemeanor.

■ Although a sentence falls within legislative parameters, this court may review its constitutionality. *Clark v. State* (1990), Ind., 561 N.E.2d 759, 765. Our supreme court has determined that the proportionality of an habitual offender penalty has two components. *Id.* First, a reviewing court should make an inquiry into the "nature" and gravity of the present felony. *Id.* Second, a reviewing court should consider the "nature" of the predicate felonies upon which the habitual offender sentence is based. *Id.* These considerations originate in the Indiana Constitution, which states, "all penalties shall be proportional to the nature of the offense." Article I, § 16; *Best v. State* (1991), Ind., 566 N.E.2d 1027, 1031.

Manley relies heavily upon *Clark*, 561 N.E.2d 759, in which our supreme court stated that its review of the nature and gravity of the present felony made a review of the predicate felonies unnecessary. *Id.* at 766. The Court then stated:

The penalty imposed upon appellant in this instance is not proportionate to his offense and therefore violates Article I, § 16 of the Indiana Constitution. An enhancement authorized by statute that is ultimately based upon a conviction for conduct that the legislature has classified as a misdemeanor, where there is no injury to person or property, is entirely out of proportion to the gravity of the offense.

*Id.* The Court, however, did not define what constitutes the " 'nature' and gravity" either of a present felony or of the predicate felonies used to support an habitual offender determination.

■ The nature and gravity of a felony includes, at a minimum, those factors a court properly may consider when it determines what sentence to impose for that offense in the first instance. According to I.C. 35–38–1–7.1(a)(2), in determining what sentence to impose for a crime, the court shall consider the nature and circumstances of the crime committed.

For example, in *Best*, 566 N.E.2d 1027, a prior conviction elevated the offense of operating a motor vehicle while intoxicated from a class A misdemeanor to a class D felony. *Id.* at 1031. Our supreme court noted that the facts listed in the case, which showed the appellant had missed a curve and had run his motorcycle off the road and up on the bank, suggested that the "nature" of the present felony was not particularly aggravated; the incident had caused little damage to property. *Id.* at 1028, 1032. Thus, the Court looked beyond the elements of the crime committed and considered its nature and circumstances. Such consideration is consistent with what I.C. 35–38–1–7.1(a)(2) allows.

In Manley's case, the nature and gravity of the crime committed include circumstances which show that he fired shots at someone and that the bullets struck the person's car. Thus, the nature and circumstances which surround the present felony, carrying a handgun without a license with a prior conviction, show that there was injury to property. That factor alone distinguishes Manley's case from *Clark*, 561 N.E.2d at 766.

■ Further, a consideration limited to the nature and gravity of a present felony, although ordinarily a misdemeanor, is insufficient to determine whether an habitual enhancement is proper. *See Sowell v. State* (1992), Ind.App., 590 N.E.2d 1123, 1125. We therefore proceed to consider the nature of each felony used to support the habitual offender enhancement.

With regard to the predicate felonies used to support his habitual offender determination, Manley claims he pled guilty to the 1973 conviction of theft of over one hundred dollars without having been informed of his rights under *Boykin v. Alabama* (1969), 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274. The post-conviction court which addressed the issue, however, concluded that Manley's claim to such a determination was barred by laches due, in part, to his unreasonable delay in filing his petition (R.195–198). This Court affirmed the denial of post-conviction relief (R.201–210). Manley correctly notes, however, that he received a mitigated sentence for

the 1979 conviction of class B felony robbery because the victim had induced the crime and Manley had acted under strong provocation.

■ Nevertheless, in the determination of the nature of the offense in question, this Court is not limited to a consideration of only the predicate felonies used to support the habitual offender determination. Our supreme court has included general criminal history in the consideration of "the nature of the earlier crimes." *Best*, 566 N.E.2d at 1032 (use of the presentence report). That we may properly consider previous crimes other than those used to support the habitual offender determination supports the view that the nature and gravity of a crime includes those factors a court is authorized to consider when it determines what sentence to impose in the first instance, here the person's prior criminal record under I.C. 35–38–1–7.1(a)(3)(A).

The trial record contains the pre-sentence report for the sentence in question. It contains a compilation of Manley's criminal history from various sources. That compilation consumes eight pages of the post-conviction record. As the trial court found in aggravation at sentencing:

> the defendant has a history of criminal activity as follows: Defendant has a conviction in 1968 for Burglary, and was sentenced under the Minor Sentencing Act, which was then law in this State; after [which] a charge of Attempt to Commit Robbery while Armed was dismissed … another charge of Assault and Battery with Intent to Kill was dismissed in 1977 … During the time between 10–10–73 and 4–7–79, defendant accumulated 17 misdemeanor convictions.

(R.142–143) (references to acquittals and to felonies used to support the habitual offender determination omitted). The court appropriately considered those matters under I.C. 35–38–1–7.1(a)(3)(A).

The court also considered the following to be an aggravating factor:

> The defendant is in need of correctional or rehabilitative treatment that can best be provided by his commitment to a penal facility for the following reasons: defen-

dant, after attempting to disrupt his trial of July 2, 1986, and being ordered to return to Court on July 3, 1986, failed to appear for trial on July 3, 1986 and fled the jurisdiction of the Court. He was returned when the State filed a Petition for Extradition from the State of Washington.

The court appropriately considered those matters under I.C. 35–38–1–7.1(b)(3) (the person is in need of correctional or rehabilitative treatment that can best be provided by commitment of the person to a penal facility).

In light of the factors a court may consider at sentencing, the record supports the conclusion that Manley's sentence is not out of proportion to the gravity of his offense, even if it was a misdemeanor at the outset. Because of Manley's lengthy record of offenses, application of some additional years under the habitual offender statute is constitutional under Article I, § 16. *See Best*, 566 N.E.2d at 1032. Also, the present offense involved an aggravated incident of property damage. Further, Manley's flight from the jurisdiction of the trial court shows a lack of respect for the criminal justice system.

As the post-conviction court noted, Manley was not eligible for less than the full thirty-year habitual offender enhancement when he received his sentence. This Court cannot conclude that the circumstances do not warrant any habitual offender sentence enhancement. For the reasons stated above, Manley has not shown the evidence is undisputed and leads inescapably to a conclusion opposite that of the post-conviction court.

## V

Manley claims that trial and appellate counsel rendered ineffective assistance when they did not address the issues he ultimately raised in his petition for post-conviction relief. We have considered some of those matters in the first, second, and fourth issues of this opinion.

■ The standard for counsel's performance is reasonably effective assistance. *Best*, 566 N.E.2d at 1031. To prevail on a claim of ineffective assistance of counsel, one must show that the attorney's performance fell below an objective standard of reason-

ableness under prevailing norms. *Id.* One also must prove that the attorney's failure to function was so prejudicial as to amount to a deprivation of a fair trial. *Id.*

On Manley's first issue, we concluded that Indiana law does not require the State to prove a handgun is operable in order to obtain a conviction of carrying a handgun without a license. Trial and appellate counsel did not render ineffective assistance when they did not contend otherwise. Manley therefore has not shown the evidence is undisputed and leads inevitably to the conclusion opposite that of the post-conviction court.

On the second issue, we determined that the jury appropriately could have concluded that the handgun in question was a firearm within the common use of that term. Therefore, Manley was not prejudiced or denied a fair trial when neither counsel addressed the issue of an instruction on the definition of that term. Again, Manley has not shown the evidence is undisputed and leads inevitably to the conclusion opposite that of the post-conviction court.

On the fourth issue, we determined that the circumstances support the conclusion that Manley's sentence is not out of proportion to the gravity of his offense, even if it was a misdemeanor at the outset. Trial and appellate counsel therefore did not render ineffective assistance when they did not attack the proportionality of his sentence. Once again, Manley has not shown the evidence is undisputed and leads inevitably to the conclusion opposite that of the post-conviction court.

We turn then to Manley's third contention, which we addressed briefly in the third issue of this opinion. There, we determined that Manley had waived the issue of the trial court's instructions on the ramifications of a sentence enhancement when he had not pursued the matter on direct appeal. Manley now claims that trial counsel rendered ineffective assistance when counsel did not pursue the issue and that appellate counsel rendered ineffective assistance when counsel did not pursue the matter or address the ineffectiveness of trial counsel on the subject.

Trial and appellate counsel, however, reasonably could have decided not to pursue an attack on the instructions related to the ramifications of the sentence Manley might receive. Trial counsel reasonably could have concluded that the jury would be less likely to find Manley to be an habitual offender after having learned of the possible penalty. A decision not to object to the instructions could have been an appropriate trial strategy. Appellate counsel could have reached a similar conclusion and reasonably could have concluded that trial counsel did not render ineffective assistance when trial counsel did not pursue the matter.

The evidence supports the conclusion that the performance of both counsel fell within an objective standard of reasonableness under prevailing professional norms or that Manley was not harmed by their performances. Manley therefore has not established that the evidence is undisputed and leads inevitably to a conclusion opposite that of the post-conviction court.

Judgment affirmed.

HOFFMAN, J. concurs.

STATON, J. dissents with separate opinion.

STATON, Judge.

I concur with the Majority's disposition of Issues I, II and III. However, I dissent to Issues IV and V because I believe Manley's sentence is unconstitutionally disproportionate to the offense, and his trial and appellate counsel were ineffective for failing to challenge its constitutionality.

Art. 1, § 16 of the Indiana Constitution prohibits the imposition of cruel and unusual punishments, and provides that "[a]ll penalties shall be proportioned to the nature of the offense." Because this case involves the proportionality of Manley's habitual offender penalty, two components are relevant to our inquiry: 1) the nature of the present felony; and 2) the nature of the prior felonies committed by this defendant. *Clark v. State* (1990), Ind., 561 N.E.2d 759, 766.

The present felony in this case is carrying a handgun without a license, ordinarily a class A misdemeanor. Because Manley had been convicted of a felony in the previous fifteen year period, his charge was elevated to a class D felony, and he received a four year sentence.[1] He was then convicted of being an habitual offender based upon a 1973 conviction for theft of under $100 and a 1979 conviction for robbery, a class B felony. For his habitual offender conviction, he received a thirty-year sentence.

Manley's thirty-year habitual offender sentence is repugnant to art. 1, section 16 of the Indiana Constitution. According to the Indiana Supreme Court:

> An enhancement authorized by [the habitual offender] statute that is ultimately based upon a conviction for conduct that the legislature has classified as a misdemeanor, where there is no injury to person or property, is entirely out of proportion to the gravity of the offense.

*Clark, supra* at 766. In this case, Manley was convicted of carrying a handgun without a license. The General Assembly classified this crime as a misdemeanor, and it by definition involves neither injury to person nor injury to property. *Clark* is analogous and controls.[2]

In *Clark*, our supreme court determined that a thirty-five year sentence for driving while intoxicated was so disproportionate to the nature of the offense as to be unconstitutional. Based on that result, the court found it unnecessary to consider the nature of the predicate felonies. *Id.* The same holds true for Manley. Manley was convicted of carrying a handgun without a license, a nonviolent act. This misdemeanor was elevated to a class D felony because Manley had two prior felony convictions, one of which was thirteen years old. Based on those same felony convictions, Manley was sentenced to an additional thirty years in prison. The clear disproportionality of this sentence makes an examination of Manley's predicate felonies unnecessary.[3] *Clark, supra.*

A consideration of this unjust sentence leads unerringly to the conclusion that Manley's rights guaranteed by the Indiana Constitution were violated. *Clark, supra.* Trial and appellate counsels' failure to raise the constitutional issue was unreasonable, prejudicial and amounted to ineffective assistance of counsel. I would remand this case to the post-conviction court and order that the thirty-year habitual offender sentence be vacated.[4] The Indiana Constitution mandates no less.

Accordingly, I dissent to the Majority's disposition of Issues IV and V.

---

1. The present presumptive sentence for a class D felony is one and one-half years. This sentence may be no more than doubled for aggravating circumstances. IND. CODE § 35–50–2–7(a) (1993).

2. The Majority attempts to distinguish *Clark* on the basis that Manley was accused of shooting at a vehicle prior to his arrest, thus causing property damage. However, the record contains no evidence proving that Manley's actions caused property damage. In fact, the only statements indicating that Manley may have shot the handgun were those of his arresting officers, who testified that they responded to a report of shots fired. No proof of property damage was ever admitted at Manley's trial.

3. A consideration of Manley's predicate felonies does not change this result, as those crimes were not particularly aggravated. As previously stated, in 1973 he was convicted of theft of under

$100, and in 1979 he was convicted of class B felony robbery. With regard to his robbery conviction, the trial court specifically found mitigating circumstances. Moreover, the Majority places too much weight on Manley's prior misdemeanor convictions, since these factors are not components in our proportionality inquiry. *See Clark, supra.*

4. The Majority concludes that because *some* habitual offender sentence may have been warranted, and the statute in place when Manley was convicted did not allow for less than a thirty-year habitual offender sentence, Manley's sentence must be constitutional. Op. at 281–282. I find this analysis unpersuasive, as it implies that this court has no alternative but to sanction a disproportionate sentence based on the lack of statutory alternatives. It is well established that a statute may be constitutional on its face and unconstitutional as applied to a particular defendant. *Clark, supra* at 765. Such is the case here.