**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Apr 18 2012, 8:58 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ANDREW B. ARNETT**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANGELA N. SANCHEZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

BRANDON RAY CARTER,                )
                                   )
    Appellant- Defendant,          )
                                   )
      vs.                      )    No. 73A01-1108-CR-379
                                   )
STATE OF INDIANA,                  )
                                   )
    Appellee- Plaintiff,           )

APPEAL FROM THE SHELBY CIRCUIT COURT
The Honorable Charles D. O'Connor, Judge
Cause No. 73C01-1003-FC-15

April 18, 2012

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

## Case Summary and Issue

Following a jury trial, Brandon Ray Carter appeals his conviction of battery causing serious bodily injury, a Class C felony. He raises two issues which we consolidate and restate as one: whether sufficient evidence was presented to sustain his conviction. Concluding that sufficient evidence was presented, we affirm.

## Facts and Procedural History

On the night of March 26, 2010, Carter, Jacob Doss, and two females, Heather Cooper and Drew Farmer, went together to a Shelbyville nightclub. The four stayed at the club without incident until the club closed early the next morning and they walked past Michael Jones, Jr., as they left.

Jones, who also knew Farmer, went with some friends to the same club that evening and noticed Farmer there as well. As the club closed, Jones was standing outside waiting for his ride. At some point, when Carter and Doss walked past Jones, words were exchanged and Jones might have made physical contact with Doss such that Doss stumbled down the steps at the exit. A scuffle ensued between at least Jones and Carter, and perhaps Doss as well. The owner of the bar broke up the fight, Carter and Doss left the scene with Farmer and Cooper, and Jones was taken to the hospital and treated.

The State charged Carter with battery causing serious bodily injury, a Class C felony, and disorderly conduct, a Class B misdemeanor. A jury found Carter guilty as charged and the trial court entered a judgment of conviction as to battery causing serious bodily injury only. Following a hearing, the trial court sentenced Carter to thirty months executed followed by twelve months of house arrest and eighteen months of probation. Carter now appeals his conviction. Additional facts will be supplied as appropriate.

## Discussion and Decision

### I. Standard of Review

Our standard of reviewing a sufficiency claim is well-settled: we do not assess witness credibility or reweigh the evidence, and "we consider only the evidence that is favorable to the judgment along with the reasonable inferences to be drawn therefrom to determine whether there was sufficient evidence of probative value to support a conviction." Staten v. State, 844 N.E.2d 186, 187 (Ind. Ct. App. 2006), trans. denied. "We will affirm the conviction if there is substantial evidence of probative value from which a reasonable trier of fact could have drawn the conclusion that the defendant was guilty of the crime charged beyond a reasonable doubt." Id.

### II. Battery Causing Serious Bodily Injury

### A. Identity

To convict Carter of battery causing serious bodily injury, the State was required to prove beyond a reasonable doubt that Carter knowingly or intentionally touched Jones in a rude, insolent, or angry manner, resulting in serious bodily injury to Jones. See Ind. Code § 35-42-2-1(a)(3).

Carter first argues that the evidence suggests mistaken identity and that Doss was the one who caused Jones's injuries. With this argument in mind, we must and do follow our standard of review, which limits our review to evidence that is favorable to the judgment along with reasonable inferences therefrom, and as to this issue determine only whether substantial evidence of probative value was presented from which a reasonable trier of fact could have concluded that Carter was the person who caused Jones's injuries.

In doing so, we are drawn to the following evidence favorable to the verdict. When confronted, Carter told an officer "I did it, I hit him um Jacob [Doss] didn't have anything to do with it." Transcript at 166-67 (testimony by Officer Jason Brown). Carter later told the officer that as he left the club and headed toward Farmer's car, he "stopped turned around and uh . . . he went back at uh Mr. Jones and uh [Carter] demonstrated raising his fist in the air um and said he 'punched him like three times.'" Id. at 175 (testimony by Officer Brown). While the officer interviewing Carter sought confirmation of these facts, Carter also said he hit Jones "a couple of times," he remembered "fighting," and that he "popped him," referring to punching Jones.[1] Id. at 175-76.

Doss testified that after he and Carter left the club and walked past Jones, Carter walked back to Jones, "[g]rabbed the man by his shirt and punched him. . . . Two or three times." Id. at 268. All were punches to the face, and on a scale of one to ten measuring the force of the punch, Doss estimated that Carter's punches were "8, 9, some where [sic] around there." Id. at 269.

Bryan Hartung, the club owner, testified that he saw at least part of the fight and broke it up. Hartung saw two individuals holding a third up against a brick wall and striking the third individual multiple times with open hands, closed fists, and forearms. Id. at 114-15. Hartung also identified Carter as one of the two who held and struck the man against the wall, and testified Carter was the one who punched the man in such a way that the man hit the back of his head against the brick wall and then slumped over. Id. at 121-22. Hartung tended to the victim's wounds until paramedics arrived and there

---

[1] Carter also told the officer that he engaged in this conduct for "no reason, there was no motive." Tr. at 176-77 (testimony by Officer Brown, recalling "[Carter's] own words").

4

does not seem to be a dispute that the victim Hartung refers to was Jones. Carter contends on appeal Hartung must have been identifying Doss rather than Carter because Hartung referred to a man in a gray shirt, but even if we were to consider this evidence which is not favorable to the verdict, we note that Hartung also testified that he is colorblind and could not identify shirt colors. Id. at 121. In short, to the extent that Hartung or others testified in such a way that conflicted with the testimony and evidence which supports the identification of Carter as an attacker,[2] weighing that evidence or assessing Hartung or others' credibility is within the role of the jury.

Sufficient evidence was presented that a reasonable fact-finder could conclude that Carter was the one who struck Jones in a way that led to Jones's injuries, and we defer to the jury's assessment of credibility, weighing of the evidence, and finding of guilt, which encompasses this conclusion.

### B. Serious Bodily Injury

Carter next argues the evidence presented does not sufficiently support the jury's finding that Jones suffered a serious bodily injury. Serious bodily injury means "bodily injury that creates a substantial risk of death or that causes: (1) serious permanent disfigurement; (2) unconsciousness; (3) extreme pain; (4) permanent or protracted loss or impairment of the function of a bodily member or organ; or (5) loss of a fetus." Ind. Code § 35-41-1-25.

Jones's most significant injury was a laceration on the back of his head. When Hartung broke up the fight and Carter and Doss left the scene, Hartung and his wife

---

[2] Carter's references to portions of Jones's testimony which are not favorable to the jury's finding of guilt do not persuade us that insufficient evidence was presented. In any event, Carter concedes that Jones testified that Carter struck him.

5

applied pressure to the back of Jones's head with paper towels to stop the "continuous flow" of blood. Tr. at 127. After approximately six to eight minutes of applying direct pressure, paramedics arrived and the bleeding had not slowed at all. Jones testified that upon being struck, he went in and out of consciousness. Id. at 225. The responding paramedic testified that he applied direct pressure for at least an additional fifteen minutes and bleeding had not stopped.

Dr. John Scandrett, the treating emergency room physician testified that the first thing he remembers about treating Jones is the severity of the laceration to the head. He testified that Jones lost an especially large amount of blood and that blood was "actively jetting from the blood stream." Id. at 50. He removed several fragments of brick from Jones's head, cauterized the artery and stapled the wound shut. He stated that Jones's injury created a substantial risk of death, and that Jones likely would have bled to death within thirty minutes without medical attention.

Carter contends Jones's injuries do not amount to serious bodily injury because Dr. Scandrett stated that if direct pressure continued to be applied, bleeding would have stopped at least for a time, and that it was possible that he did not save Jones's life. Carter also contends that Jones's testimony regarding pain referred only to removal of the staples and that Jones did not suffer further complications. It strikes us that none of the following are required for an injury to constitute serious bodily injury: substantial bleeding would continue without application of direct pressure, a victim's death without a physician's assistance, or further complications. Further, Dr. Scandrett testified that Jones complained of pain before, id. at 67, and during the treatment, which involved the "painful procedure" of clamping off blood vessels in the scalp without anesthesia. Id. at

6

62 (testimony of Dr. Scandrett). At trial, Jones testified that he continues to have severe headaches three to four times per week which he did not experience before the injury, loud noises also now cause headaches, and his sleep and memory are affected.

Based on this evidence, we conclude that sufficient evidence of probative value was presented that Jones suffered serious bodily injury. Specifically, Dr. Scandrett and others' testimony indicates that Jones's injuries created a substantial risk of his death, he went in and out of consciousness, and he was in extreme pain. In addition, contrary to Carter's appellate contentions, evidence suggests Jones continues to suffer serious ill effects from this incident.

## Conclusion

Considering only the evidence favorable to the judgment and reasonable inferences to be drawn therefrom, we conclude that sufficient evidence was presented to sustain Carter's conviction of battery causing serious bodily injury. Therefore his conviction is affirmed.

Affirmed.

NAJAM, J., and VAIDIK, J., concur.